WATSON, Justice.
Defendant, Keith Arnold Reed, was convicted by an eleven to one jury vote of aggravated arson, in violation of LSA-R.S. 14:51. The sentence was five years at hard labor, the statutory minimum. Reed has appealed from his conviction and sentence, assigning five errors in the trial court.
FACTS
Late at night, on November 17, 1978, the Shreveport home of the Reverend and Mrs. Sammy Williams was destroyed by fire. The occupants were awakened by a popping noise and escaped without injury.
*1315 Keith A. Reed had attended a nearby party that evening and had left, looking for his brother’s car. As he walked along, he flipped lighted matches. He cut through the J. C. Davis yard, and some clothes on a line were burned. Davis and Williams are back door neighbors. Reed continued on the path between their yards and arrived at the Williams’ residence.
A neighbor across the street, Ora Lee Wright, saw the boy in the carport. Her testimony was that he threw a lighted rope in the back of the Williams’ van and then squatted down for a few seconds in the back corner of the carport. There was a “firecracker” sound, and the blaze appeared. (Tr., Vol. 3, p. 9) The boy drove off in Charles Flournoy’s Mercury automobile, which had the keys in the ignition.
Two five gallon cans of kerosene and cleaning fluid, some lumber and a small can of motor oil were stored under the Williams’ carport. The fire originated on the outside back wall of the carport. Keith Reed was apparently unacquainted with the Reverend and Mrs. Williams.
The next morning the Mercury was in a ditch by a Mrs. Sheperd’s home. She called Keith Reed’s father, who talked to his son and told him to report his unauthorized use of the automobile to the police. Keith Reed was taken into custody at 8:50 A.M. At the police station that morning, Saturday, November 18, Keith was advised of his rights, handcuffed and put in a police car. He was taken to the Shreveport City Jail.
Keith Reed was born November 11, 1961, and was only a few days past his seventeenth birthday when the fire occurred. He was in the twelfth grade in high school. After the arrest Saturday morning, Keith saw his parents briefly on Sunday afternoon, November 19, for about ten minutes. Captain Robert E. Mayence, Jr. of the Fire Department and Detective Fuller had advised Mr. Reed that they were going to charge his son with arson; that he could not be held in the city jail longer than seventy-two hours; and that he would be in court on Monday morning. When Mrs. Reed asked about bond, the officers advised her and her husband to be in court Monday morning. Mr. Reed told his son that he was going to employ an attorney for him and did so early Monday morning, November 20.
Mr. Reed engaged an attorney on Monday around 9:30 A.M. The two appeared in court at 10:00 A.M. but could not locate Keith. The attorney’s first inquiries at the jail were unsuccessful. He was finally advised that the boy would be produced in court at 2:00 P.M.; that there were transportation problems. Keith did not appear at 2:00 P.M. or again at 4:00 P.M., allegedly because of lack of transport. Each time his attorney called the jail and identified himself as the lawyer for Keith Arnold Reed. Each time he was assured his client would be in the next “jail docket”. (Tr., Vol. 1, p. 110) Keith failed to appear on Tuesday morning at 10:00 A.M. and again on Tuesday afternoon. A writ of habeas corpus was filed on Tuesday afternoon. Keith was then transferred from the city jail at 7:50 P.M. Tuesday night. He was booked for aggravated arson and unauthorized use of an automobile at that time. He was not produced in court until 10:00 A.M. on Wednesday, November 22, the first time he saw his lawyer.
Keith made three oral statements on November 18. Early on November 19, he made a recorded statement in which he admitted flipping matches at the clothes in the Davis’ yard but denied using any matches under the Williams’ carport. However, in a recorded statement on Tuesday morning, November 21, Keith admitted accidentally starting a small fire in the Williams’ carport.
The only substantial issue on appeal is whether the statement given on Tuesday, November 21, should have been suppressed.
Keith Reed was not brought before a judge within seventy-two hours of his arrest. However, Saturdays and Sundays are excluded from the seventy-two hour maximum period provided in LSA-C.Cr.P. art. 230.1:
“A. The sheriff having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of *1316 counsel. Saturdays, Sundays and legal holidays shall be excluded in computing the seventy-two hour period referred to herein.
“B. At this appearance, if a defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The court may also, in its discretion, determine or. review a prior determination of the amount of bail.”
The primary requirement of this article is that an arrested person be brought before a judge promptly. The seventy-two hour period is the outer limit of what constitutes promptness. Keith Reed was not brought before a judge for four days. Although fully advised of his rights, he was prevented from seeing the counsel retained by his father. A person arrested has a right to confer with counsel. LSA-C.Cr.P. art. 230. It is doubtful that Keith’s nonappearance on Monday and Tuesday resulted from lack of transportation. The only reasonable inference is that Keith Reed was kept at the jail for further, more successful, interrogation. LSA-C.Cr.P. art. 228 provides for prompt booking of each arrested person. The official revision comment to the article points out that the booking requirement is a protection against improper police tactics. The effect of those tactics here was to prevent young Keith from conferring with his counsel and to encourage him to incriminate himself. Reed’s only communication with the outside world during a period of four days was a brief ten minute visit with his parents on the second day.
It appears that the last two days’ confinement, between the nineteenth and the twenty-first, undermined Reed’s resistance to questioning. Attorney Miller did not specifically request that Reed not be interrogated after he was engaged to represent him. Compare State v. Weedon, 342 So.2d 642 (La.,1977). However, this was only because the jail personnel repeatedly told Miller that his client was going to be produced.
Unaware that an attorney had been retained for him, Keith Reed waived his right to the assistance of a lawyer. However, it is doubtful that the waiver he signed on November 21, while his counsel was attempting to locate him, was an informed one. State v. Jackson, 303 So.2d 734 (La.,1974). Whether there has been an intelligent waiver of the right to counsel is determined from the particular circumstances of each case. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Here, the effect of not booking Reed “promptly” and not taking him before a judge “promptly” was his un-counselled self-incrimination. See McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). A young and unsophisticated boy was the focus of an accusatory interrogation while his lawyer was expecting him in court. This continued for two days after the lawyer was retained. An “.. . incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights.” Miranda v. State of Arizona, 384 U.S. 436 at 476, 86 S.Ct. 1602 at 1629, 16 L.Ed.2d 694 (1966). Even though Reed’s attorney did not physically present himself at the jail, access to his client was effectively denied. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). When the government interferes with the Sixth Amendment right to counsel by giving erroneous information to a defendant’s attorney, it cannot take advantage of any time gained by that ploy to obtain incriminating statements.
The trial court erred in not suppressing the statement given by Keith Reed on Tuesday, November 21.
For the foregoing reasons, the judgment of the trial court herein is reversed and the matter is remanded for a new trial.
REVERSED AND REMANDED.
MARCUS, J., dissents.