CIACCIO, Judge.
Defendant, Clyde Bacchus, was charged with the first degree murder of Wayne Joseph. R.S. 14:30(3). He was tried by a twelve man jury, found guilty of second degree murder and was sentenced to life imprisonment at hard labor. R.S. 14:30.1. Defendant appeals his conviction and sentence on the basis of five (5) assignments of error. We find merit with two (2) assignments of error, therefore, we reverse the defendant’s conviction and sentence and remand the case for a new trial.
On the night of April 19, 1982, Clyde Bacchus and Aaron Joseph were involved in a fight at the Bunny Friend Park. On April 20, 1982, the defendant and three of his friends were returning from an outing at the lake when they saw Aaron Joseph with four relatives and a friend in the 2100 block of Desire Street, in New Orleans. *1258 The events immediately preceeding the shooting of Wayne Joseph are conflicting.
The defendant and his friends testified that the vehicle in which they were riding was flagged down by Aaron Joseph. They further stated that after this, Melvin Joseph and Wayne Joseph attacked the defendant with a knife. The defendant stated that he saw a knife, however, he did not know who possessed it or if it was directed at him. The defendant’s friends testified that Bacchus acted in self defense when, after his gun was retrieved from the car seat, he fired the three or four shots which resulted in Andrew Joseph being struck in the side, Melvin Joseph being struck near the spine and Wayne Joseph being struck in the back. Wayne Joseph subsequently died from the gunshot wound.
The witnesses for the prosecution testified, however, that Bacchus stopped his car when he saw Aaron Joseph walking across the street. These witnesses further testified that they were unarmed at the time they were attacked by the defendant but that the defendant was armed with a gun and his companion with a cane.
Following the shooting, Bacchus and his friends fled the scene in their vehicle. The police were summoned. Shortly after their arrival, Officer Richard Hunter, accompanied by Aaron Joseph and a friend, went in search of the defendant. They found Bacchus several blocks from the scene of this incident and apprehended him after a short chase. The defendant was returned to the scene where he was identified by the witnesses to the shooting.
While seeking to apprehend the defendant, Officer Hunter noticed Bacchus or Joseph Brown motion towards a mailbox. Upon further investigation, a pistol was retrieved from the mailbox. Subsequent tests revealed that this was the weapon used to kill Wayne Joseph. Additionally, three spent casings were recovered from the scene of the shooting.

Assignment of Error Nos. 2 and 4

The defendant, by these assignments of error, contends that the trial court erred when it refused to grant him a new trial on the basis of a prejudicial error or defect in the proceedings, which was discovered after the verdict, notwithstanding his reasonable diligence. C.Cr.P. Art. 851(4). That is, the defendant discovered, after the verdict, that juror #202, Phyllis Jones, was the mother of Assistant District Attorney, Susan Jones. This fact, though known by the juror and the prosecutor, was not disclosed to the Court nor the defendant. Additionally, Susan Jones, although not involved in the prosecution of this case, did appear, on more than one occasion, in the courtroom during the trial. The defendant argues that, if these facts had been discovered during voir dire, that the juror could have been challenged for cause. Moreover, if these facts were discovered during the trial, the alternate juror could have been utilized. Therefore, the defendant contends that Ms. Jones was impliedly biased and he was prejudiced by her presence on the jury in that this denied him a fair trial and due process of law.
An accused is insured a fair trial and due process of law by the state and federal constitutions. U.S. Const. Amends. 14, 6. La. Const. Art. 1 Secs. 2, 16.
In conjunction with these guarantees, although the law does not require a jury to be composed of individuals who are totally unacquainted with the defendant, the prosecution witnesses, the prosecuting attorney and other witnesses, it does require that the jurors be fair and unbiased. State v. Shelton, 377 So.2d 96 (La. 1979).
A juror may thus be challenged for cause by the state or the defendant when the provisions of C.Cr.P. Art. 797, which reads in part:
C.Cr.P. Art. 797. Challenge for cause

(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that *1259 he can render an impartial verdict according to the law and the evidence;
(3)The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

The basis of the challenge for cause may be “actual bias”, wherein there exists objective evidence of prejudice, such as explicit assertions of partiality by the suspected juror, or “implied bias”, wherein, although a prospective juror declares impartiality, his testimony and the circumstances involved reveal facts from which bias, prejudice or inability to render judgment according to law may be inferred. Implied Bias: State v. Smith, 430 So.2d 31 (La.,1983); State v. Shelton, 377 So.2d 96 (La.,1979); State v. McIntyre, 365 So.2d 1348 (La.,1979).
A relationship to a law enforcement officer is not, of itself, grounds for removal for cause. State v. Smith, supra. Rather, it must be determined whether it can reasonably be concluded that this relationship would influence the juror in arriving at a verdict. See: State v. Smith, supra; State v. Monroe, 366 So.2d 1345 (La.,1978).
The trial judge has broad discretion in determining the impartiality of jurors and his ruling will not be disturbed absent a showing of abuse of discretion. See: State v. Winn, 412 So.2d 1337 (La.,1982).
In the instant case actual bias is not an issue, as Mrs. Jones testified that her relationship with her daughter, Assistant District Attorney Suzanne Jones, did not influence her decision in this case. Thus we must determine whether the facts before us present a case of implied bias.
At the hearing on the motion for a new trial Phyllis Jones testified that her daughter, Suzanne Jones, is an assistant district attorney in the Orleans Parish District Attorney’s Office. She stated that she did not disclose this fact because she had only been questioned as to whether she was related to any “law enforcement agent” and she did not interpret this to include assistant district attorneys. She stated that it was “no secret” to her fellow jurors that her daughter was an assistant district attorney. She also admitted seeing her daughter in the courtroom during the defendant’s trial.
Suzanne Jones testified that she was an Assistant District Attorney for the Parish of Orleans and that she held that position on the days of the defendant’s trial. She became aware of her mother’s presence on the jury in this ease after the jury selection but during the trial, having been furnished this information by one of the prosecuting attorneys. She did not inform the Court or the defense counsel of her relationship to this juror. She visited the courtroom more than once and was of the opinion that her mother saw her on one occasion. She was not then assigned to that courtroom nor did she have any cases pending there.
The two prosecuting attorneys each admitted that they knew Suzanne Jones’ mother was serving on the jury. One of them knew that the mother of Suzanne Jones was on the April jury panel prior to the trial. Both knew this during the trial but they did not disclose this fact to the Court nor to the defense counsel.
We conclude that the bias of juror # 202 can be implied from the facts of this ease. We pretermit the question of whether the relationship of Phyllis Jones as the mother of an assistant district attorney, in and of itself, is a sufficient basis for concluding that this juror was influenced in her decision. However, this relationship is compounded by the fact that the assistant district attorney-daughter presented herself in the courtroom, on more than one occasion, thus attracting the attention of her mother, the juror, and impliedly indicated her interest in the outcome of the case. These circumstances create a situation in which bias, prejudice or inability to render a judgment according to law, may reasonably be *1260 inferred. Hence it is reasonable to conclude that these facts, in addition to the mother-daughter relationship, would influence this juror (and possibly fellow jurors) in arriving at a verdict.
Thus, we find that the trial judge erred in denying the defendant’s motion for a new trial based upon this newly discovered evidence of a procedural defect. The defect constitutes a substantial violation of a constitutional or statutory right and, accordingly, we must reverse the defendant’s conviction and sentence and remand this matter for a new trial. See: State v. McIntyre, supra and State v. Monroe, supra.
Since we find merit with assignments of error numbers 2 and 4 we pretermit a discussion of the remaining assignments.
For the reasons assigned, the defendant’s conviction and sentence are reversed, and the case is remanded to the district court for a new trial.
REVERSED AND REMANDED.
BARRY, J., concurs.
BARRY, Judge,
joins the majority with additional reasons.
I join the reversal based on assignments two and four, but feel assignment one deserves attention.
The closing argument by the prosecutor exceeded constitutionally permissable bounds. Among other questionable comments, he said:
“I also hope that a murder cannot happen some year ago and that defendant go hire a lawyer in Jefferson Parish and come in and hire an expert to build a pretty model like this.”
The prosecutor, referring to defense counsel’s argument “that he’s here to present a set of circumstances and help construe the gap,” then added: “I assure you that’s not his purpose.”
Again referring to defense counsel, the prosecutor implored: “Please don’t be misled by why he is really here.”
I don’t understand the reference to hiring “a lawyer in Jefferson Parish.” Perhaps this implies Jefferson Parish lawyers are superior and was a compliment. But it was clearly improper to say (or imply) that the defendant had to hire a lawyer because he committed a crime. In other words, if the defendant was not guilty, he wasn’t in need of a lawyer, especially one from Jefferson Parish. Any comment on defendant’s employment of counsel is an inference of guilt, especially if the jury wasn’t advised of defendant’s right to counsel.
The prosecutor’s statement was intended to confuse the facts and prove guilt by ominously pointing to the defendant’s decision to have the assistance of counsel. That is impermissible. U.S. v. McDonald, 620 F.2d 559 (5th Cir.1980). Lawyers in criminal cases are necessities not luxuries. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1968).
The other comments impunged defense counsel’s integrity and were clearly unwarranted. The State has no monopoly on justice. Such prosecutorial statements severely damage an accused’s opportunity to present his case to the jury and abuse due process.